**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re: | Case No. 2:26-bk-51271 |
| WILLIAM M. WHITELAW, JR., | Chapter 7 |
| Debtor. | Judge Tiffany Strelow Cobb |

**DEBTOR'S SUPPLEMENTAL BRIEF IN SUPPORT OF
HOMESTEAD EXEMPTION AND IN RESPONSE TO CREDITOR
MICHAEL W. LENHART, SR.'S AUGUST 19, 2026 BRIEF [DOC. 40]**

William M. Whitelaw, Jr. (the "Debtor"), submits this supplemental brief pursuant to the Court's August 5, 2026 Order [Doc. No. 33]. The Debtor incorporates, and does not repeat, the factual and legal arguments in his *Omnibus Response* [Doc. No. 22] and *Limited Sur-Reply* [Doc. No. 34]. This brief addresses the authorities relied upon or renewed by Creditor Michael W. Lenhart, Sr. ("Lenhart") in his *Brief in Support of Objection to Homestead Exemption As Permitted by the Court's August 5, 2026 Order [Doc. 33]* [Doc. No. 40], and the limited petition date issue they do not resolve.

**I. INTRODUCTION**

The parties agree on three propositions: (1) exemption rights are determined as of the petition date; (2) the Debtor transferred legal title to 1013 Bluff Crest Drive before the petition date; and (3) a bankruptcy court may not create an exemption through generalized equitable authority. Those propositions do not, on their own, resolve the pending objection.

The absence of real property on the petition date does not itself resolve the statutory question. Ohio Rev. Code § 2329.66(A)(1)(b) expressly protects an interest in either "real or personal property" that the debtor uses as a residence. The question

therefore is not simply whether the Debtor continued to own Bluff Crest Drive, he did not, but whether the particular personal property interest he held on the petition date, created from the disposition of his residence and continuously held under the state court's preservation order without ever coming into his possession or control, remained an interest qualifying under the Ohio statute.

More precisely, the question is whether, when a debtor's Ohio residence is sold before bankruptcy but the debtor never receives or controls the proceeds because the proceeds are transferred directly at closing into a court registry pursuant to an order expressly preserving the parties' rights, the debtor's petition date interest in that segregated fund is categorically excluded from Ohio Rev. Code § 2329.66(A)(1)(b) merely because legal title to the residence passed before bankruptcy. The Debtor does not contend that every prepetition sale of a residence creates exempt cash proceeds. Nor does he seek to disturb the purchaser's title or invoke § 105(a) to manufacture an exemption.

Rather, the Court should decide the exemption by applying Ohio law to the actual interest held on March 24, 2026. The evidentiary hearing scheduled by the Court provides the appropriate forum to determine the precise chronology and character of the fund, the effect of the state court orders, the Debtor's lack of possession and dominion over the proceeds, the continuous segregation and tracing of the fund, and the contemporaneous evidence concerning his intended replacement residence.

## II. GOVERNING PRINCIPLES

### A. The Court evaluates the exemption as of the petition date, applying the Ohio exemption scheme.

Exemptions are fixed as of the bankruptcy petition date. *White v. Stump*, 266 U.S. 310, 313 (1924); *In re Wengerd*, 453 B.R. 243, 250–51 (B.A.P. 6th Cir. 2011); *In re Stitt*,

252 F. 1, 6 (6th Cir. 1918). Ohio has opted out of the federal exemptions, and 11 U.S.C. § 522(b)(3)(A) consequently directs the Court to Ohio exemption law. *See Wengerd*, 453 B.R. at 248–49.

The Ohio homestead provision protects a debtor's interest, up to the applicable $182,625 statutory amount, in real or personal property that the debtor or a dependent "uses as a residence." Ohio Rev. Code § 2329.66(A)(1)(b). The objecting party bears the burden to prove that an exemption is not properly claimed. Fed. R. Bankr. P. 4003(c); *Wengerd*, 453 B.R. at 248.

The petition date rule therefore identifies *when* the Court measures the exemption. It does not eliminate the antecedent inquiry: what legal and equitable interest did the Debtor hold at that point? State law creates and defines property interests unless a federal interest requires a different result. *Butner v. United States*, 440 U.S. 48, 55 (1979).

**B. The adverse proceeds authorities define the limits of the Debtor's argument but do not resolve the court-controlled fund presented here.**

The adverse proceeds authorities establish what the Debtor is not arguing: traceability, intent, or equitable considerations alone do not convert ordinary sale proceeds into a homestead. In *In re Richards*, 642 B.R. 777 (B.A.P. 6th Cir. 2022), the B.A.P. held that a debtor who elected the *federal* exemptions could not exempt escrowed proceeds from a residence sold before filing under 11 U.S.C. § 522(d)(1). The panel reasoned that the federal provision did not extend to cash proceeds merely because they were traceable to a former residence. *Id.* at 784–87.

Thus, *Richards* forecloses an argument based on traceability alone. It does not, however, decide the materially different petition date interest presented here. *Richards* interpreted § 522(d)(1) after the debtor chose federal exemptions; it expressly declined to

use Kentucky law because § 522(d), rather than state law, supplied the claimed exemption. *Id.* at 784. More importantly, the *Richards* debtor sold her home, received the proceeds, and placed them in escrow with her bankruptcy law firm. *Id.* at 782. Here, by contrast, the Debtor never possessed, deposited, commingled, redirected, or exercised dominion or control over the proceeds. The closing agent transmitted the net proceeds directly into the Franklin County Clerk of Courts' registry under an agreed order preserving the parties' rights. The state court process therefore intercepted the proceeds at the point the residence was converted to money, before they became unrestricted, debtor-controlled cash. *Richards* did not decide the state law character of such a restricted, court-controlled substitute fund.

The Debtor likewise does not invoke § 105(a), intent alone, or generalized equity as an independent basis for relief. A bankruptcy court's equitable authority cannot override the Code or enlarge a statutory exemption. *In re Foremost Mfg. Co.*, 137 F.3d 919, 924–25 (6th Cir. 1998). The Debtor's claim remains statutory. The state court orders are relevant not because they created an exemption, but because they define the nature and restrictions of the property interest to which Ohio law applies.

## III. THE AUTHORITIES LENHART CITES DO NOT DISPOSE OF THE PETITION DATE INTEREST IN THE COURT-REGISTRY FUND

### A. The title transfer cases do not answer the separate question concerning the fund.

The Debtor does not dispute that the purchaser acquired legal title to Bluff Crest Drive. *Wayne Bldg. & Loan Co. of Wooster v. Yarborough*, 11 Ohio St. 2d 195, 211–12, 228 N.E.2d 841 (1967), confirms that a properly delivered deed passes title even if recording occurs later. But *Wayne Building* was a lien priority decision; it did not address

Ohio's homestead exemption or the legal character of proceeds held in a court registry after a sale.

The Debtor's claim is not an effort to unwind the sale, challenge the purchaser's title, or treat the former real estate itself as property of the estate. It concerns the separate fund created at closing. According to the record described in the Debtor's prior filings, the closing agent remitted the net proceeds directly to the Franklin County Clerk of Courts under an agreed order that preserved rights and did not confer a prejudgment attachment, constructive trust, equitable lien, or other security interest on Lenhart. *See* Doc. No. 22-1, Ex. B, Agreed Order ¶¶ 8, 10. The subsequent agreed turnover entry treated the fund as property of the bankruptcy estate subject to further order of this Court. Id. ¶¶ 4–7.

Those orders do not themselves establish exempt status, and the Debtor does not contend that the parties could create an exemption by agreement. Their significance is narrower and factual: they prevented the ordinary consequences of receipt and disposition of sale proceeds from occurring and expressly preserved the parties' rights in the substituted fund. Unlike a seller who receives proceeds and may spend, redirect, or commingle them, the Debtor never obtained possession or dominion over these proceeds. They moved directly from the closing to a segregated court registry and remained identifiable and restricted. Those circumstances materially distinguish the petition date asset from unrestricted proceeds voluntarily received and controlled by a seller, and they require the Court to determine the fund's state law character before applying Ohio Rev. Code § 2329.66(A)(1)(b).

### B. The execution and foreclosure authorities address a different procedural setting.

Lenhart's reliance on *Dailey v. Miller*, 2024-Ohio-1340, ¶¶ 59–68, *Gledhill v. Walker*, 143 Ohio St. 381, 385–86, 55 N.E.2d 647 (1944), *Adkins v. Massie*, 2001-Ohio-2448, at *3–4 (4th Dist. Mar. 12, 2001), and *Gale v. Ficke*, 148 Ohio App. 3d 657, 659–60, 775 N.E.2d 548 (8th Dist. 2002) is misplaced.

Those decisions concern the procedural timing for asserting an exemption in state court execution or foreclosure. *Dailey* held that a homestead exemption does not bar entry of a foreclosure decree and is ordinarily asserted when execution or sale is imminent. 2024-Ohio-1340 at ¶¶ 60–61. The case also recognized that a nonconsensual judgment lien may not be satisfied from properly exempted interests. *Id.* at ¶¶ 70–72.

This is a bankruptcy exemption dispute governed by Ohio Rev. Code § 2329.66(D)(1), which fixes the relevant interest on the petition date. The Debtor is not asserting an exemption as a defense to a pending foreclosure of property he still owned. These authorities do not decide whether a prepetition court registry fund, created from the disposition of the Debtor's former residence under the described orders, is an interest eligible for the Ohio exemption.

### C. Section 2329.661 does not support implied waiver and does not decide this case.

Ohio Rev. Code § 2329.661(B) renders void an agreement purporting to waive Ohio exemption laws. The agreed registry procedure was not a waiver; the order expressly preserved the parties' rights. Doc. No. 22-1, Ex. B, Agreed Order ¶ 10.

Section 2329.661(C) also does not support Lenhart's conclusion. It provides that § 2329.66 does not affect or invalidate identified sales, contracts, security interests, or

pledges concerning *personal property*. The Debtor does not challenge the completed real estate sale in any event. The statutory provision therefore does not answer whether Ohio law protects the particular interest the Debtor held in the separately maintained fund.

**IV. THE SCHEDULED EVIDENTIARY HEARING PROVIDES THE PROPER FORUM FOR THE REQUIRED FACTUAL DETERMINATION**

The circumstances described in the Debtor's existing filings present factual questions that are not resolved by cases addressing ordinary proceeds. The evidentiary hearing permits the Court to determine, among other things:

1. The exact chronology of the state court order, the sale and closing, the direct deposit into the court registry, and the March 24, 2026 petition date;

2. That the sale proceeds were never paid to, deposited by, or possessed by the Debtor, and that he never had dominion or control over them;

3. That the proceeds remained separately identifiable, segregated, traceable, and uncommingled while held in the court registry;

4. That the agreed order preserved the parties' rights in the fund and expressly withheld any prejudgment attachment, constructive trust, equitable lien, or other security interest for Lenhart;

5. That the later agreed turnover order recognized the fund as property of the bankruptcy estate, subject to this Court's further order;

6. That the sale was driven by the Lenhart litigation and that the Debtor intended contemporaneously to use the proceeds to acquire a replacement, less expensive homestead. *See* Doc. Nos. 22-1 and 22-2;

7. The contemporaneous evidence corroborating that residential purpose, including the Debtor's property search and realtor communications, mortgage inquiries, and other replacement housing communications; and

8. The extent to which the litigation and registry process itself prevented the Debtor from accessing the proceeds and carrying out that replacement housing purpose before the petition date.

These facts do not eliminate the statutory requirement that the claimed interest fall within § 2329.66(A)(1)(b). They do, however, show why the Court should not assume this fund has the same legal character as unrestricted sale proceeds received and controlled by a debtor. The Court can determine the issue only by identifying the precise petition date interest under Ohio law and then applying the statutory text to that interest in light of the evidence concerning segregation, control, preservation of rights, and residential purpose.

This approach accords with *Wengerd*. There, the B.A.P. applied Ohio's statute as written and concluded that the debtors' future intention to leave their home did not defeat an exemption because they owned and used the home as their residence on the petition date. *Wengerd*, 453 B.R. at 250–53. The distinction from this case is apparent: *Wengerd* involved a residence still owned and occupied on the petition date, whereas the Debtor here claims an interest in a court-held fund. *Wengerd* therefore does not answer the present proceeds question, but it confirms that Ohio exemption rights must be determined by identifying the precise interest held on the petition date and applying the statutory text to that interest, rather than by applying a generalized rule based merely upon what occurred before or after that date.

Similarly, *Lubin v. Mason (In re Mason)*, 607 B.R. 360, 364–67 (Bankr. N.D. Ga. 2019) illustrates the materially different ordinary proceeds setting. There, the debtor received sale proceeds and placed them in a bank account under her control. The decision construed Georgia law, not Ohio law, and did not involve a court registry fund created under an order preserving the parties' rights. *Mason* therefore does not answer the distinct petition date property interest presented here.

**V. CONCLUSION**

For these reasons, the Debtor respectfully requests that the Court:

1. At the evidentiary hearing, determine the precise nature and character of the court registry fund, the effect of the state court orders, the Debtor's lack of possession and dominion over the proceeds, the continuous segregation and tracing of the fund, and the factual issues bearing on the claimed exemption;

2. Reject Lenhart's contention that the absence of legal title to real estate on the petition date is itself dispositive, overrule Lenhart's objection to the Debtor's homestead exemption, and allow the claimed Ohio homestead exemption, up to $182,625, in the Debtor's petition date interest in the identifiable net-sale-proceeds fund; and

3. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Sean Stone*
Sean Stone (0100678)
Tax Workout Group, P.A.
175 South Third Street
Columbus, OH 43215
Telephone: (937) 436-0033
Email: sstone@twg.law
*Counsel for Debtor*

**CERTIFICATE OF SERVICE**

I certify that on August 20, 2026, a true and correct copy of the foregoing was served through the Court's CM/ECF system on all registered ECF participants and by first-class mail on any non-ECF parties entitled to service.

*/s/ Sean Stone*
Sean Stone